```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
ZELHIDETH MONTAÑO LINARES,                                 :
                                                           :
                                    Plaintiff,             :
                                                           :           22-CV-7272 (VSB)
                   - against -                             :
                                                           :           OPINION & ORDER
                                                           :
JOSE LUIS HERRERA VIRGUEZ,                                 :
                                                           :
                                    Defendant.             :
                                                           :
-----------------------------------------------------------X
```

Appearances:

Sean M. Holas
Pitcoff Law Group, P.C.
New York, NY
*Counsel for Plaintiff*

Dennis Grossman
Law Office of Dennis Grossman
Great Neck, NY
*Counsel for Defendant*

VERNON S. BRODERICK, United States District Judge:

      Before me is a motion to dismiss filed by Jose Luis Herrera Virguez ("Defendant" or "Herrera").  (Doc. 43.)  Because the Second Amended Complaint does not state a claim upon which relief may be granted, Defendant's motion to dismiss is GRANTED.

**I.     Factual Background**[1]

      From 2009 until 2016, Plaintiff Zelhideth Montano Linares ("Plaintiff" or "Linares") and

---

[1] The facts contained in this section are based upon the factual allegations set forth in the Second Amended Complaint, including its exhibits.  (Doc. 40.)  A complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

Defendant were romantically involved and cohabitated in Venezuela. (Doc. 40 ("SAC") ¶ 15.) Plaintiff and Defendant previously appeared as defendants before Judge Ronnie Abrams in *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Virguez*, No. 18-CV-606 (S.D.N.Y. April 4, 2019) ("*Merrill Lynch*"). (*Id.* ¶ 16.) The plaintiff in *Merrill Lynch* filed the suit "to determine [Plaintiff's and Defendant's] respective ownership of, distribution of, and respective entitlement to various accounts held by Merrill Lynch under the names of [the parties here]." (*Id.*) Linares and Herrera, as the interpleader defendants in *Merrill Lynch*, brought crossclaims against each other. (*Id.* ¶ 17–18.)

The parties dismissed their claims against one another by executing a settlement agreement on February 21, 2019 (the "Settlement Agreement" or "Settlement Agr."), which was then entered by a so-ordered stipulation (the "Stipulation")[2] by Judge Abrams the next day. (SAC ¶¶ 20–23; *see also* Doc. 40-1.[3]) "As part of the Settlement Agreement, the Parties agreed to distribute the funds and securities in the accounts at issue held [b]y Merrill Lynch." (SAC ¶ 21.) The Settlement Agreement also contained a Mutual Release clause which provided that the Parties "completely release and forever discharge each other . . . from any and all claims . . . which each [Party] ever had, now has, or hereafter can, shall or may have, for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the date of

---

I assume the allegations in the Second Amended Complaint to be true in considering the motions to dismiss pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). My reference to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] The Stipulation provided, in part: "In any proceeding brought hereafter by one Interpleader Defendant against the other Interpleader Defendant to enforce the terms of the Settlement Agreement, the prevailing Interpleader Defendant in the enforcement proceeding shall recover of the other Interpleader Defendant his/her costs and attorneys incurred in the enforcement proceeding including any appeals there." (Stipulation ¶ 3.)

[3] The underlying Settlement Agreement and related Stipulation between the Parties was attached to the Second Amended Complaint. (Doc. 40-1.) Document 40-1 is a 15-page document which contains (1) the "Stipulation" found on pages 2–3 and (2) the "Settlement Agreement" found on pages 4–15.

2

this Mutual General Release." (Settlement Agr. ¶ 4.) The Mutual Release provision contained an exception that it "shall not apply to any claims based upon, arising from or out of, or relating to, and/or concerning child support, child visitation and/or child custody of or concerning one or both of the Children."[4] (*Id.*) Moreover, the Settlement Agreement included a choice-of-law and forum-selection clause that provided that the Settlement Agreement would be governed by the laws of New York, and that any suit to enforce the agreement would be brought in the United States District Court for the Southern District of New York. (*Id.* ¶ 5(c).)

Since February 22, 2019 when the Settlement Agreement was entered into and the Stipulation was so ordered, Defendant has filed four lawsuits against Plaintiff in Venezuela (the "Venezuelan Lawsuits"). (SAC ¶ 2.) "Through the Venezuelan Lawsuits, [Defendant] seeks the unlawful attachment and seizure of amounts in excess of $20,000,000 of [Plaintiff's] property in Venezuela and abroad." (*Id.* ¶ 3.) In this action, Plaintiff alleges a breach of contract claiming that the Venezuelan Lawsuits amount to a breach of the Settlement Agreement. (*Id.* ¶ 5.)

## II. Procedural History

Plaintiff initiated this action by filing a complaint on August 25, 2022. (Doc. 1.) On August 25, 2023, I granted Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (the "2023 Opinion"). (Doc. 22 ("2023 Op.").) In the 2023 Opinion, I held that I have subject-matter jurisdiction because the Settlement Agreement allowed me to retain jurisdiction to enforce it. (*Id.* at 6–7.) I next held that, "[a]s Defendant admits, I have personal jurisdiction over him for actions pursuant to the enforcement of the Settlement Agreement." (*Id.* at 7.) However, I dismissed the case for failure to state a claim because the original complaint only

---

[4] The Settlement Agreement defined the "Children" as Plaintiff's and Defendant's "two minor children together, L.A.H.M. and L.D.H.M." (Settlement Agr. 1.)

3

requested declaratory judgment, which was not an independent cause of action. (*Id.* at 8.) Notably, I stated that even if Plaintiff's claim were interpreted as a claim for breach of contract, "Plaintiff fails to plead the elements of a breach of contract or provide any substantive details related to the Venezuelan Lawsuits." (*Id.*) In dismissing the case, I granted Plaintiff leave to amend. (*Id.*)

After Plaintiff filed an amended complaint and the parties briefed a new motion to dismiss, on July 17, 2024, I granted Defendant's motion to dismiss for failure to state a claim (the "2024 Opinion"). (Doc. 36 ("2024 Op.").) In the 2024 Opinion, I noted that Defendant "devote[d] much of his motion to attacking the alleged jurisdictional deficiencies of the Amended Complaint," arguments that I had already addressed and decided in my 2023 Opinion. (*Id.* at 2.) I stated again that I have subject-matter jurisdiction and personal jurisdiction based on the Settlement Agreement's express terms granting me jurisdiction to enforce it, and that "I see no reason to revisit my jurisdictional decisions" in the 2024 Opinion. (*Id.*) I then analyzed the motion to dismiss for failure to state a claim under Rule 12(b)(6) and found that "Plaintiff still ha[d] not identified an underlying substantive cause of action for which she could pursue the declaratory relief she seeks." (*Id.* at 2–4.) Significantly, I emphasized that "even if Plaintiff were to assert a cause of action, including for breach of contract, the Amended Complaint does not state with sufficient specificity how Defendant's actions in bringing these lawsuits violated the parties' Settlement Agreement, let alone to state a claim for breach of contract." (*Id.* at 4 n.2.) I then granted Plaintiff "one final opportunity to amend her complaint to address the deficiencies identified" in the 2024 Opinion. (*Id.* at 1.)

On August 30, 2024, Plaintiff filed the Second Amended Complaint. (Doc. 40.) After receiving an extension, Defendant filed a motion to dismiss, (Doc. 43), and an accompanying

4

memorandum, (Doc. 44 ("Mem.")).  After receiving extensions, Plaintiff filed an opposition brief on November 22, 2024, (Doc. 47 ("Opp'n")), and Defendant filed a reply brief on December 6, 2024, (Doc. 48 ("Reply")).

### III. Legal Standard

#### A. *Rule 12(b)(1) and Rule 12(b)(2)*

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–102 (1998)).  "A case is properly dismissed for lack of subject matter jurisdiction under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  Courts have "an independent obligation to consider the presence or absence of subject matter jurisdiction *sua sponte*." *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006).

A case can also be dismissed for lack of personal jurisdiction.  *See, e.g.*, *Ryzhov v. Malofeyev*, No. 23-CV-1072, 2024 WL 3498391, at *2 (S.D.N.Y. July 22, 2024) (dismissing case for lack of personal jurisdiction), *appeal dismissed* (Dec. 13, 2024).  However, as a general matter, a court cannot dismiss a complaint *sua sponte* for a failure to assert personal jurisdiction since personal jurisdiction can be waived.  *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("Because personal jurisdiction can be waived by a party, a district court should not raise personal jurisdiction *sua sponte* when a defendant has appeared and consented, voluntarily or not, to the jurisdiction of the court." (internal citations and emphasis omitted)).

5

### B.     *Rule 12(b)(6)*

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  This standard demands "more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

In considering a motion to dismiss, a court must accept as true all well-pleaded facts alleged in the complaint and must draw all reasonable inferences in the plaintiff's favor. *Kassner*, 496 F.3d at 237 (2d Cir. 2007).  A complaint need not make "detailed factual allegations," but it must contain more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted).  Finally, although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.*

## IV.     Discussion

### A.     *Subject Matter Jurisdiction*

Defendant argues that I lack subject-matter jurisdiction for several reasons.  First, Defendant contends that there is no "case or controversy" as required under Article III of the Constitution. (Mem. 2–3.)  Second, Defendant invokes the act-of-state doctrine, whereby courts are precluded from challenging a foreign government's official acts in their jurisdiction. (*Id.*)  Third, Defendant argues that there is no diversity jurisdiction. (*Id.* at 5.)  Finally, Defendant argues that there is no ancillary jurisdiction to enforce the Settlement Agreement. (*Id.* at 6–7.)  I

address each in turn.

First, Defendant argues there is no "case or controversy" here because Plaintiff "actively litigated Defendant's actions in the Venezuelan Courts for years," and "turned to this Court only years later, after she lost in the Venezuelan Courts." (Mem. 2 (emphasis omitted).) Defendant essentially argues that there is no "case or controversy" here because Plaintiff supposedly engaged in litigation in the Venezuelan Lawsuits, and therefore "validated defendant's choice of Venezuelan forums." (*Id.* at 2–3.) However, Defendant misconstrues the case-or-controversy requirement. The case or controversy in this action is for a breach of contract. Defendant's argument that Plaintiff waived her right to assert that claim because of alleged conduct in Venezuela does not eliminate the case or controversy in this case.

Second, Defendant invokes the act-of-state doctrine, (Mem. 2), which "precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory," *Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964). However, the Second Circuit has made clear that the act-of-state doctrine "does not bar [a court's] adjudication of whether those same acts are wrongful under a cause of action properly brought before [the court]." *Celestin v. Caribbean Air Mail, Inc.*, 30 F.4th 133, 135 (2d Cir. 2022) (citing *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400 (1990)). Indeed, the Supreme Court has analyzed its prior decisions regarding the doctrine and found that the act-of-state doctrine was applicable only where "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *Kirkpatrick*, 493 U.S. at 405.

The act-of-state doctrine does not bar me from adjudicating Plaintiff's claims here because she does not seek relief that "require" that I "'declare invalid' a sovereign's 'official

7

act.'"  *Kashef v. BNP Paribas S.A.*, 925 F.3d 53, 60 (2d Cir. 2019) (quoting *Kirkpatrick*, 493 U.S. at 405).  Plaintiff makes clear that she does not request that I "overturn or review any act of the Venezuelan government or overturn an order of the Venezuelan judicial system."  (Opp'n 10.)  Because the validity of a purported foreign official's act is "simply not an issue," the act-of-state doctrine does not preclude this case from moving forward.  *Celestin*, 30 F.4th at 139 (stating that the act-of-state doctrine does not apply where "[t]o evaluate the merits of the aiding and abetting claim, the Court had to determine not whether the alleged acts are valid, but whether they occurred" (internal quotation marks omitted)).

Third, Defendant argues again that Plaintiff has failed to establish diversity jurisdiction.  (Mem. 5.)  As I have held previously, (*see* 2023 Op. 6), I agree with Defendant that I do not have diversity jurisdiction over this matter, but note again that I have subject-matter jurisdiction based on the terms of the Settlement Agreement, (*id.*).

Finally, Defendant argues that I lack ancillary jurisdiction to enforce the Settlement Agreement here because the Venezuelan Lawsuits are not barred by the Settlement Agreement.  (Mem. 6–7.)  Specifically, Defendant contends that the Settlement Agreement's release provision does not bar suits involving property bought or sold after the date of the Settlement Agreement, the parties' children, or criminal prosecution—the subject of the Venezuelan Lawsuits.  (*Id*. at 6–7.)  However, Defendant conflates his jurisdictional argument (whether I have ancillary jurisdiction to enforce the Settlement Agreement) with his 12(b)(6) argument (that the Venezuelan Lawsuits are not breaches of the Settlement Agreement).  I have already addressed in the 2023 Opinion that I have jurisdiction to enforce the Settlement Agreement.  (2023 Op. 6–7.)

Defendant's reliance on *State Street House, Inc. v. New York State Urban Development*

*Corp.*, 75 F. App'x 807 (2d Cir. 2003) (summary order), is misplaced.  In that case, the Second Circuit recognized that "[i]t is well settled in this circuit that . . . the district court can exercise ancillary jurisdiction to enforce a settlement agreement *only* if the dismissal order expressly retained jurisdiction over that particular agreement, or incorporated it into the order." *Id*. at 810 (emphasis in original).  Plaintiff asserts that "*State Street House* supports Plaintiff's position" because the Settlement Agreement expressly states that "this Court shall retain jurisdiction to enforce the terms of this Settlement Agreement." (Opp'n 11.)  Defendant does not address this argument, and actually concedes that the 2023 Opinion "previously resolved this ancillary-enforcement jurisdictional issue against Defendant." (Reply 5 n.2.)

In sum, the express terms of the Settlement Agreement grant me subject-matter jurisdiction to hear this case, and Defendant fails to establish any other basis that deprives me of such jurisdiction.

### B.    *Personal Jurisdiction*

Defendant repeats his arguments that I lack personal jurisdiction, (Mem. 8), arguments that I had already rejected, (2023 Op. 7).  Defendant fails to show why my previous holding regarding personal jurisdiction should be disturbed.  "As Defendant admits, I have personal jurisdiction over him for actions pursuant to the enforcement of the Settlement Agreement." (*Id.*)

### C.    *Failure to State a Claim*

"'Settlement agreements are contracts,' and a breach of contract claim is available for breach of a settlement agreement." *Delaney v. HC2, Inc.*, 761 F. Supp. 3d 641, 675 (S.D.N.Y. 2025) (quoting *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999)).  "To state a claim for breach of contract under New York law, a plaintiff must plead:

9

(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Piuggi v. Good for You Prods. LLC*, No. 23-CV-3665, 2025 WL 588316, at *11 (S.D.N.Y. Feb. 24, 2025) (internal quotation marks omitted).

Plaintiff alleges that Defendant breached the Settlement Agreement when he "fil[ed] four (4) actions in Venezuela seeking seizure of the personal property of Plaintiff" because those claims were released according to the release provision of the Settlement Agreement. (SAC ¶ 57.) Defendant's primary argument is that the Venezuelan Lawsuits were beyond the scope of the Settlement Agreement's release provision. (*See* Mem. 8–9.) As stated above, Defendant contends that the Venezuelan Lawsuits—which involve property bought or sold after the date of the Settlement Agreement, the parties' children, or criminal prosecution—are outside the scope of the Settlement Agreement's release provision. (*Id*. at 6–7.) This determination would naturally require an interpretation of the Settlement Agreement based on principles of contract law. *See Powell v. Omnicom*, 497 F.3d 124, 128 (2d Cir. 2007) ("A settlement agreement is a contract that is interpreted according to general principles of contract law."). However, the Second Amended Complaint suffers from another fatal flaw that renders it unnecessary to interpret the scope of the Settlement Agreement's release provision.

As Defendant correctly notes, nowhere in the Second Amended Complaint does Plaintiff allege that she adequately performed or complied with the Settlement Agreement. Failure to allege this element of a breach-of-contract claim is sufficient to warrant dismissal. *See, e.g.*, *Sing for Serv., LLC v. United Serv. Cont. Grp., LLC*, No. 20-CV-8458, 2021 WL 76427, at *4 (S.D.N.Y. Jan. 7, 2021) (dismissing breach-of-contract claim for failure to allege adequate performance); *Harte v. Ocwen Fin. Corp.*, No. 13-CV-5410, 2016 WL 3647687, at *5 (E.D.N.Y.

10

July 1, 2016) (same).  Further, Plaintiff abandoned her claim for failing to address Defendant's argument in his motion to dismiss.  *Youmans v. Schriro*, No. 12-CV-3690, 2013 WL 6284422, at *5 (S.D.N.Y. Dec. 3, 2013) ("A plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims." (collecting cases)).  Even after Defendant moved to dismiss on this basis, among other reasons, (Mem. 8), Plaintiff proffered no description of her performance or other explanation why the Second Amended Complaint is silent concerning her performance, and therefore has abandoned her claims.  Plaintiff's breach-of-contract claim is therefore dismissed.  Plaintiff's request for declaratory judgment cannot stand alone because—as I have noted twice before in the 2023 Opinion and 2024 Opinion, (*see* 2023 Op. 8; 2024 Op. 4)—it is not "an independent cause of action," and is instead a form of relief, *see In re Joint E. & S. Dist. Asbestos Litig.*, 14 F.3d 726, 731 (2d Cir. 1993).  Accordingly, Defendant's motion to dismiss is GRANTED.[5]

This dismissal is with prejudice.  In the 2023 Opinion, I dismissed this action for failure to state a claim, and described Plaintiff's failure to plead the basic elements of a breach of contract.  (2023 Op. 8.)  In the 2024 Opinion, I again dismissed this action for failure to state a claim, and noted that Plaintiff's allegations failed to "state a claim for breach of contract."  (2024 Op. 4 n.2.)  I emphasized that I would grant Plaintiff "one final opportunity amend her complaint to address the deficiencies identified" in the 2024 Opinion.  (*Id*. at 1.)  My prior opinions have put Plaintiff on notice of the prior complaint's numerous deficiencies, yet Plaintiff has repeatedly failed to correct those deficiencies.  "Because the plaintiff has failed to state a claim after three opportunities to do so, the Second Amended Complaint is dismissed with prejudice."  *Ackerman*

---

[5] Because Plaintiff fails to adequately allege performance, I need not determine whether Defendant's alleged conduct falls outside the scope of the Settlement Agreement.

11

*v. Ackerman*, 908 F. Supp. 2d 540, 545 (S.D.N.Y. 2012), *aff'd*, 549 F. App'x 45 (2d Cir. 2014); *see also Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 745 n.5 (S.D.N.Y.) (dismissing claims with prejudice after plaintiffs failed to state a claim despite "two opportunities to do so"), *aff'd*, 505 F. App'x 45 (2d Cir. 2012); *Weinreb v. Xerox Bus. Servs. LLC Health and Welfare Plain*, 323 F. Supp. 3d 501, 522 (S.D.N.Y. 2018) (dismissing claims with prejudice after plaintiffs' "repeated failure to plead a sustainable cause of action").

### V. <u>Conclusion</u>

For the reasons stated above, Defendant's motion to dismiss is GRANTED, and the Second Amended Complaint is dismissed with prejudice.

The Clerk of Court is respectfully directed to terminate Document 43 (motion to dismiss), and close this case.

SO ORDERED.

Dated: September 24, 2025
      New York, New York

*(signature)*
Vernon S. Broderick
United States District Judge